# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **JAMES THOMASON AND MARICLARE THOMASON**, PARENTS, ON BEHALF OF E.T., A MINOR | )<br>)<br>)<br>) |
| Plaintiffs, | ) Case No.<br>)<br>) |
| v. | ) JURY TRIAL DEMANDED<br>) |
| **KENOSHA UNIFIED SCHOOL DISTRICT**, | )<br>)<br>) |
| Defendant. | ) |

### COMPLAINT IN SUPPORT OF APPEAL OF DECISION OF ADMINISTRATIVE LAW JUDGE UNDER 20 U.S.C. §1415; 28 U.S.C. §1331

**COMES NOW**, Plaintiffs E.T. (E.T. or Student) a minor child by and through her Parents James and Mariclare Thomason (Parents), individually, by and through their attorney, Keith Altman, and hereby state the following:

# I. INTRODUCTION

On or around December 19, 2024, James and Mariclare Thomason (Parents), on behalf of their daughter, E.T., filed a Due Process Hearing Request (Complaint) with the Wisconsin Department of Public Instruction against Kenosha Unified School District (KUSD or District) for: (1) denying Student a free, appropriate public education (FAPE) in violation of the Individuals with Disabilities Education Act (IDEA); (2) violating Parents' procedural rights under IDEA; and (3) failing to offer Student an appropriate educational placement. This is an appeal of a July 16, 2025, Decision by the Administrative Law Judge (ALJ) of the State of Wisconsin Division of Hearings and Appeals (DOA) (see Exhibit A) finding the District did not deny Student FAPE or violate Parents' procedural rights.[1] Plaintiffs seek an Order overturning the July 16, 2025, Decision and finding the District violated Student's educational rights and Parents' procedural rights under the IDEA. Plaintiffs also seek attorney fees and costs related to requesting and proceeding with the issues in their due process Complaint.

---

[1] The parties received an Amended Decision on July 17, 2025 due to the ALJ's error in issuing an incorrect final draft of her decision. The only amendment was the deletion of a paragraph on Page 14 containing information not relevant to the matter.

## II. PARTIES & JURISDICTION

1. Plaintiff, James Thomason, is now, and at all times herein mentioned, an individual residing in Kenosha County, Wisconsin within the boundaries of KUSD and was Parent and guardian of Plaintiff, E.T.

2. Plaintiff has standing herein pursuant to his guardianship over E.T. and in his individual capacity as to the IDEA claims.

3. Plaintiff, Mariclare Thomason, is now, and at all times herein mentioned was, an individual residing in Kenosha County, Wisconsin within the boundaries of KUSD and was Parent and guardian of Plaintiff, E.T.

4. Plaintiff has standing herein pursuant to her guardianship over E.T. and in her individual capacity as to the IDEA claims.

5. The Supreme Court determined a parent may be a "party aggrieved" under 20 U.S.C. § 1415(g)(1) for the purposes of 20 U.S.C §1415(i)(2). *Winkelman v. Parma City School District*, 550 U.S. 516, 531 (2007).

6. Defendant, Kenosha Unified School District (KUSD or District), is now, and at all times herein mentioned was, a public school district duly organized and existing under the laws of the State of Wisconsin and is located within, organized, and existing under the laws of the State of Wisconsin and is located within Kenosha County.

7. This civil action is brought against the District pursuant to 20 U.S.C. §1400 et. seq., which is commonly known as the Individuals with Disabilities with Education Act (IDEA).

8. This court has subject matter jurisdiction in this action pursuant to 28 U.S.C §1331 in that it arises under the IDEA, which also expressly vests this court with jurisdiction over this action in 20 U.S.C. §1415(i)(2).

### III. FACTUAL ALLEGATIONS

9. E.T. is a seventeen-year-old female adopted by Parents in August 2009.

10. E.T. has a history of several diagnoses, including, but not limited to, severe intellectual disability, autism spectrum disorder (ASD), obsessive-compulsive disorder (OCD), attention-deficit/hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD), disruptive behavior disorder, conduct disorder, intermittent explosive disorder (IED), seizure disorder, and encephalopathy. She is non-verbal and communicates through multiple modes of communication, including an AAC device (TD Snap). She also requires accommodations for toileting, including assistance with using a toilet and changing her diaper.

11. E.T. qualifies for special education and related services under the IDEA disability categories for Autism and Other Health Impairment.

12. E.T. was admitted to the Neurobehavioral Unit at Kennedy Krieger Institute (KKI) on November 2, 2023 for treatment targeting problem behavior. KKI is a residential therapeutic hospital setting, but not an educational setting. KKI addressed E.T.'s toileting needs, behavior, and communication through TD Snap communication app on Student's personal tablet device. The KKI team and other professionals who have worked with E.T. strongly recommend E.T. be placed in a residential educational placement.

13. E.T. was discharged from KKI on August 29, 2024. Plaintiffs were provided a Discharge Summary and a Behavior Plan upon E.T.'s discharge from KKI.

14. E.T. was enrolled at Indian Trail High School and Academy (Indian Trail) in Kenosha Unified School District on August 5, 2024. The academic year for 2024-2025 began on September 4, 2024.

15. E.T.'s Individualized Education Program (IEP) team met and created her IEP (see Exhibit B) and Individual Health Plan (IHP) on June 11, 2024, prior to her discharge from KKI. E.T.'s IEP orates information provided by KKI, including observations, reports, and recommendations by the providers at KKI.

16. E.T. engages in escalated, aggressive behaviors due to several of her diagnoses. The District's last functional behavioral assessment (FBA) of E.T. was conducted on December 7, 2016.

17. Upon E.T.'s admission, KKI conducted an FBA and created a behavior intervention plan (BIP). When E.T. started school, the District decided not to revise E.T.'s KUSD BIP, which was last revised in 2021. The District agreed to incorporate the KKI Behavior Plan into E.T.'s IEP to address her behavioral needs while they collected data to update her KUSD BIP.

18. The KKI Behavior Plan was developed for implementation by a registered behavior technician (RBT) under the supervision of a board-certified behavior analyst (BCBA). Parents offered to provide a BCBA for E.T. in the beginning of the school year to effectively implement and oversee the KKI plan at Indian Trail, but the District declined. The District did not provide a RBT until April 2025.

19. E.T. continued to experience aggressive behaviors while at Indian Trail. The team at Indian Trail used restraint and seclusion methods to manage E.T.'s behavior on multiple occasions, despite parent concerns and specific professional recommendations advising against such methods due to her PTSD diagnosis. During toileting, E.T. consistently demonstrated, and continues to demonstrate, escalated behavior.

20. The June 2024 IEP, and all subsequent IEPs, provide accommodations for E.T.'s toileting. E.T.'s current IEP explicitly refers to E.T's Health Plan as part of her disability-related needs as well as a program modification or support.

21. At the beginning of the 2024-2025 academic year, Indian Trail staff attempted to bring E.T. to a private restroom for toileting. However, the team independently determined the facility was too small to appropriately and safely toilet E.T. due to both her behaviors triggered by toileting and staff concern for the safety of other students. Accordingly, despite parent concerns, staff then began changing and toileting E.T. in another location; a small space with a hydraulic lift table and portable toilet. This space was inappropriate as the space no longer permitted regular, meaningful skill-building toileting, in accordance with her IHP and IEP. Specifically, while this space is used by other students with various toileting needs, this space is not a functioning bathroom.[2] As such, the District did not provide consistent opportunities for E.T. to use a functional toilet and progress with her toileting in accordance with her IEP programming.

22. E.T.'s IHP was revised on November 19, 2024, to clarify toileting procedures. Specifically, the November 2024 IHP titled the procedures "Bathroom Directions," revising the previous language from "toileting suggestions." Furthermore, the Bathroom Directions specified toileting occurs in a "handicapped restroom", not in a room with a portable toilet or solely changing her diaper.[3] Concerned about the appropriateness of E.T.'s toileting and toileting environment,

---

[2] The space is also used to store janitorial supplies.
[3] The term "handicapped bathroom" refers to an accessible bathroom, as defined by the Americans with Disabilities Act.

parents communicated frequently with Indian Trail to receive assurances that the service was provided.

23. While admitted to KKI, E.T.'s primary mode of communication was her TD Snap. KKI determined the TD Snap was the most effective form of communication to reduce behavior triggers. However, she cannot access or navigate the TD Snap device with assistance. As such, The KKI team specified in E.T.'s Behavior Plan that she should regularly receive access to her AAC device (TD Snap) by having the device nearby and available to her at all times. Furthermore, E.T.'s IEP states the TD Snap must be accessible to her at all times.

24. E.T.'s IEP team met on October 4, 2024. Parents brought up several concerns, including concerns related to E.T.'s access to her TD Snap device. E.T.'s IEP team met again on January 15, 2025. Once again, Parents voiced their concerns about E.T.'s access to her TD Snap device. Parents reviewed the activity log on E.T.'s TD Snap device and discovered the application was not accessed or utilized as frequently as required by both the KKI Behavior Plan and her corresponding IEP.

25. On or around December 19, 2024, Parents filed their due process Complaint. From January to April 2025, E.T. received a total of six suspensions due to purported aggressive behaviors. E.T. received no suspensions prior to the due process filing.

26. On January 26, 2025, the parties attended mediation. The parties were unable to resolve the issues, and the matter proceeded to hearing.

27. On March 3, 2025, the parties met with the assigned ALJ in a prehearing telephone conference. The hearing was scheduled for April 1, 2, 3, and 4, 2025. After April 4, the hearing was not complete and the parties agreed to additional hearing dates on May 15, 16, 21, and 22, 2025.

28. On multiple occasions throughout the hearing, Parents' Attorney was denied the opportunity to lay foundation during his examinations of witnesses. During his line of questioning before narrowing the scope of his examination, Parents' Attorney was not given the opportunity to ask broad questions to lay foundation for witnesses. In litigation, to eventually ascertain the credibility of witnesses, it is expected of all attorneys to have the opportunity to lay such foundation. Here, the denied opportunity to lay witness foundation hindered Parents' Attorney's examination because it assumed facts not in evidence nor on the record and furthermore deterred Parents' Attorney's need to create a record for a proper foundation.

29. The ALJ's denial of Parents' Attorney to lay foundation necessary to establish witnesses' knowledge and credibility hindered Parents' Attorney from exercising his expected opportunity to meaningfully seek responses to more tailored questions. (see Exhibit D)

30. The due process hearing concluded on May 22, 2025, as scheduled.

31. In March 2025, Parents requested that E.T. be admitted to the KUSD 2024 Summer School Program Life, Learning, and Leisure (LLL) (see Exhibit C). The program teaches students with disabilities to develop essential life skills for post-secondary life.

32. Despite sending multiple email requests for updates on E.T.'s admission to the program, Parents did not receive a decision letter until June 2, 2025, from KUSD denying E.T. admission to the LLL summer program. The decision letter, dated May 30, 2025, was sent and received months after Parents' initial request. The District did not send the decision letter rejecting E.T. for the LLL summer program until after the due process hearing.

33. The LLL decision letter contains information related to the issues that were presented in the due process hearing. The letter states the District denied E.T.'s admission to the summer program based on an internal risk assessment that concluded there is a "substantial risk of injury to [E.T.], students, staff, and members of the community." The District's decision letter noted that E.T. "has significant behavioral needs." This conclusion is particularly relevant to key issues from the due process hearing.

34. Parents received the due process Decision on July 16, 2025. In the Decision, the ALJ refers to the District's witnesses as "credible". Specifically, the

Decision states that there is "*credible* testimony" by the District staff or that the District staff "*credibly* testified" (see Exhibit A) (emphasis added). There is no explanation or justification for what was determined to be "credible." The Decision states there is no credible evidence on the record to support Parents' allegations. But in referring to Parents' witnesses, the Decision does not include any level of deference, despite demonstrated expertise and certification by multiple witnesses from Parents' case.

## IV. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**(Appeal of Administrative Due Process Hearing against Defendant KUSD Due to Violation of Plaintiffs' Rights under the IDEA)**

35. Plaintiffs restate each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

36. As the aggrieved parties under the ALJ's Decision, Plaintiffs appeal the administrative decision as to the issues presented as well as all other matters and issues raised in this complaint. 20 U.S.C. §1415(g)(1).

37. The Decision should be reversed *inter alia* because the ALJ erred in the following regard: (1) finding that the District did not deny E.T. FAPE; (2) finding Parents failed to present credible evidence against the District; (3) restricting Parents' Attorney from creating a proper record and laying proper

foundation; and (4) failing to provide grounds for finding the District's witnesses credible.

38. Under 20 U.S.C. §1415 (f)(3)(iii), the hearing officer, while conducting an impartial due process hearing must, at a minimum, possess the knowledge and ability to conduct the hearing according to "appropriate, standard legal practice."

39. The administrative law judge failed to conduct the hearing with the appropriate standard legal practice by restricting Parents' attorney from laying necessary foundation while examining witnesses.

40. The Court reviews an administrative decision under a modified *de novo* standard, considering the administrative law judge's factual findings as *prima facie* correct. Here, the factual findings in the Decision cannot be given the same level deference because the ALJ's record is unreliable based on Parents' attorney's inability to lay a proper foundation or make a proper record.

41. The Decision demonstrates an unreliable method of determination. The Decision describes the District's witnesses' testimony as "credible" but fails to explain or demonstrate the reason for their credibility, and if or why Parents' witnesses are not credible. The Decision refers to only two of Parents' six witnesses – two board-certified behavior analysts.[4] The Decision mentions the

---

[4] Christine Koessl, BCBA & Emily Chesbrough, M. Ed., BCBA, LBA.

witnesses' titles and includes merely a single sentence regarding each of their professional assessments of Student and the issues presented. The Decision otherwise fails to evaluate their expert testimonies.

42. The District has not provided and cannot provide appropriate toileting, as required in Student's IEP and IHP.

43. The District has not demonstrated that they can adequately manage or regulate E.T.'s behavior without using restraint and/or seclusion methods.

44. The District has not appropriately incorporated the KKI Behavior Plan in Student's IEP or BIP, as originally agreed to at the beginning of the 2024-2025 academic year.

45. The District has not developed an appropriate IEP with appropriate goals for E.T. to develop appropriate communication skills, including using the TD Snap as her primary method of communication.

46. The District has demonstrated an inability to provide E.T. with access to necessary opportunities to develop life skills with KUSD due to her "significant behavioral needs".

47. The District has not provided E.T. with an educational placement that provides her with FAPE. E.T. requires a residential placement in order to receive FAPE.

48. As a direct and proximate result of the actions described above, Plaintiffs sustained damages including, but not limited to, denial of FAPE, loss of educational opportunity, loss of special education and related services, and related educational costs.

## SECOND CLAIM FOR RELIEF

### (Recovery of Attorneys' Fees as Prevailing Party)

49. Plaintiffs incorporate by reference all prior allegations as if fully restated.

50. Under 20 U.S.C. §1415(i)(3)(B), a court may award reasonable attorneys' fees to a parent of a child with a disability as a prevailing party in a due process proceeding under the IDEA.

51. Given the erroneous nature of the Decision by the Administrative Law Judge, Plaintiffs are a prevailing party.

52. As the prevailing party, Plaintiffs are entitled to attorneys' fees.

53. Attorneys' fees related to this matter are estimated to exceed $75,000.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court receive the records of the administrative proceedings, and based on the foregoing enter judgment for Plaintiffs and against Defendant as follows:

1. Overturn the Decision by the Administrative Law Judge of the State of Wisconsin Division of Hearings and Appeals;

2. That the Court find that Student requires a residential educational placement at Shrub Oak International School or other appropriate placement;

3. That the Court award Plaintiffs the cost of suit incurred herein, including reasonable attorney fees, interest, and costs in connection with the filing and prosecution of all claims herein, including those incurred at the administrative level; and

4. For such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues stated in this action.

Dated: August 28, 2025                Respectfully submitted,

/s/ Keith Altman
Keith Altman, Esq.,
LAW OFFICE OF KEITH ALTMAN
30474 Fox Club Drive
Farmington Hills, MI 48331
(248) 987-8929
keithaltman@kaltmanlaw.com
*Attorney for Plaintiffs*